STATE OF MISSOURI ex rel. CITIZENS BANK OF DEXTER, Relator, v. PATTERSON et al., Respondents.

St. Louis Court of Appeals, February 18, 1908.

1. **COUNTY COURTS: Depositary of County Funds: Drainage Districts.** An order of the county court selecting a certain bank as depositary of the county and school funds under the provision of section 6819, Revised Statutes 1899, as amended by the Act approved March 5, 1901, and the giving of a bond by such depositary as required by that section, did not entitle such depositary to the funds of one of the drainage districts into which the swamp lands of the county were divided; the depos-

itary could not maintain a writ of prohibition to prevent the deposit of the funds of such drainage district with another depositary.

2. JURISDICTION: Revenue Law. The determination of the question whether a county depositary selected by order of the county court for the deposit of county and school funds was entitled to the funds of a drainage district in such county, does not require a construction of the revenue law so as to give the Supreme Court jurisdiction of the matter; it only involves a construction of the order of the county court and a determination of whether the funds of the drainage district were included in the order selecting the county depositary.

## Petition for Prohibition.

WRIT OF PROHIBITION DENIED AND PROCEEDINGS DISMISSED.

*Henry S. Shaw* and *H. H. Larrimore* for relator.

The county treasurer was the custodian of the funds of the county. "His duties are prescribed by law, and are as follows: 'To receive all moneys payable into the treasury of the county, and to disburse the same on warrants drawn by order of the county court, to keep a just account of all moneys received and disbursed; to deliver over to his successor in office all things pertaining thereto, together with all moneys belonging to the county.'" These duties could not be interfered with by the county court. State ex rel. v. Moore, 74 Mo. 413; State ex rel. v. Powell, 67 Mo. 395; Butler County v. Bank, 143 Mo. 13.

*N. A. Mozley* and *Ralph Wammack* for respondents.

A speedy settlement of the question raised by this record is much desired by respondents and by all the tax payers in drainage district No. 4 as well, but respondents cannot understand how their settlement can be reached without a construction of the revenue laws of the State. Jurisdiction to do this, we understand, belongs exclusively to the

Supreme Court. As far back as the fifty-third Appeal Report this court decided that jurisdiction to construe the revenue laws of the State belongs to the Supreme Court. Moore v. Vaughn, 53 Mo. App. 632; State ex rel. v. Springer, 134 Mo. 212; Driving Park v. Kansas City, 174 Mo. 425; St. Joseph v. Insurance Co., 183 Mo. 1.

BLAND, P. J.—This is an original proceeding by prohibition against respondents, who are justices of the county court of Stoddard county. An alternative writ was issued by one of the judges of this court, in vacation, to which writ respondents have filed their return, accompanied by certified copies of the proceedings of the county court of said county, out of which the controversy arose. The petitioner has filed a demurrer to the return, and the cause has been submitted on the petition, return to the alternative writ of mandamus and petitioner's demurrer thereto. Briefly stated, the facts are that on May 5, 1905, on its bid to pay $3\frac{1}{2}$ per cent per annum, petitioner was selected by the county court of Stoddard county as the depositary of the funds of said county and the public school funds, for a term of two years from the date of the order of selection. Petitioner executed the bond required by statute, which was approved by the county court, and petitioner thereafter became the depositary of the county and public school funds of Stoddard county. The overflowed and swamp lands of said county are divided into drainage districts. Districts Nos. 1, 2, 5 and 6 had money to their credit, and at the February term, 1906, of the county court, an order was made, reciting that no provision had been made for depositing at interest the funds for the various drainage districts of the county, and asked for bids. Bids were received on March 22, 1906, and opened by the county court, and petitioner being the highest bidder, at $3\frac{1}{4}$ per cent on daily balances, was selected as

depositary of the funds belonging to districts Nos. 1, 2, 5 and 6, for a term ending July 1, 1907. Petitioner's bid was for all the drainage districts in the county. District No. 4 had no funds at the time and, presumably, for this reason was not named in the order selecting petitioner as the depositary for drainage districts. The petitioner accepted the designation and gave a good and sufficient bond, which the court approved, obliging itself to safely keep, etc., and pay 3¼ per cent per annum interest on daily balances on all funds deposited with it, belonging to districts Nos. 1, 2, 5 and 6, and thereafter the funds of these districts were deposited with the petitioner. Prior to June, 1906, bonds of district No. 4 were sold and the proceeds paid to the county treasurer. On June 4, 1906, the Peoples' Bank of Bloomfield, Missouri, through its president, C. A. Mozley, appeared before the county court of Stoddard county, and submitted the bid of the bank to become depositary of the fund of district No. 4, offering to pay 3½ per cent interest per annum on daily balances of said fund. The bid was accepted, the bond of the bank, with approved security, was executed and filed and it was selected by the court as depositary of the funds of district No. 4.

1. Petitioner claims that it is entitled to the funds of district No. 4, under the order of its selection as depositary of county funds, dated May 5, 1905. If its contention is correct, the provisional writ of prohibition should be made absolute; if not, the writ should be quashed and the proceedings dismissed. Without quoting the statute providing for the creation of drainage districts for the purpose of draining swamp and overflowed lands, at the expense of the lands to be benefited, a reading of the statutes makes it clear that the scheme provided by law, and the purpose of the law, is to authorize the county court, on petition of land owners within a given territory, to organize such territory into a drainage district, issue bonds and sell the same at

not less than par, for the purpose of raising the nec-
essary money to survey, locate and construct drainage
ditches.   The administration of the law and the issue
and sale of the bonds is committed to the county courts,
and the collector of the county is *ex officio* collector
of drainage taxes, and the county treasurer the cus-
todian of the district funds.   Section 6819, Revised Stat-
utes 1899, as amended by the act of the General As-
sembly, approved March 5, 1901 (Laws, 1901, p. 102)
requires "the county court at noon on the first day of
May term of said court in 1901, and every two years
thereafter, . . . to select as the depositary of the
county funds, district school funds and capital school
funds not otherwise invested according to law, the bank-
ing corporation, association or individual banker, offer-
ing to pay to said county the largest rate of interest
per annum for said fund."   No part of the county
revenue can be applied to the purpose for which drainage
districts are formed; on the other hand, the county de-
rives no direct benefit from the districts and none of the
district funds can be lawfully diverted to any other
county purpose.   Funds of drainage districts are not
mentioned in the order of May 5, 1905, of the county
court, selecting petitioner as depositary of the county
and school funds nor in the statute by authority of
which the order was made, nor are they nominated in
petitioner's bond to the county, hence under no con-
struction of the order or bond can it be said that peti-
tioner is entitled to become the depositary of the funds
of district No. 4.

2.   The position of respondents, that the construc-
tion of the revenue laws of the State is involved in
the issues in the case, and for this reason this court
is without jurisdiction of the subject-matter, we do not
think is well taken.   The question decisive of the case
(whether or not petitioner is entitled to receive on de-
posit the funds of drainage district No. 4) can, as we

have seen, be settled by determining a single question, i. e., whether or not the funds of the district are included in the order of the court, designating petitioner as depositary of county funds. This question is answered by the statement that, like a public school district, a drainage district is a corporation, separate and distinct from the quasi-municipal corporation known as a county, though composed of territory situated in the county. Being a separate, artificial person, its funds are its own, as much so as if it was a natural person; and the fact that the same officer (the county treasurer) is the legal custodian of the funds of both the county and the district does not confuse the idea that what belongs to the district cannot belong to the county. The funds of both are revenue. So, both gold and silver are money, but it does not require a construction of the coinage acts of Congress to say that gold is not silver, yet it would be just as reasonable to say that one should consult the coinage acts to distinguish the one metal from the other, as to say that one must go to the revenue laws of the State to find out whether or not drainage district funds are county revenue,— to put it stronger, to find out whether A's horse is his property or the property of B.

Writ of prohibition denied and proceedings dismissed. All concur.